IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| XR COMMUNICATIONS, LLC, DBA VIVATO TECHNOLOGIES,<br><br>Plaintiff,<br><br>v.<br><br>HP INC.,<br><br>Defendant. | Civil Action No. 6:21-CV-694-ADA<br><br>**FILED UNDER SEAL** |

## ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

Before the Court is Defendant HP Inc.'s ("HP") Motion to Transfer Venue under 28 U.S.C. § 1404(a) to the Northern District of California ("NDCA"). ECF No. 27. Plaintiff XR Communications LLC dba Vivato Technologies ("Vivato") filed its Response (ECF No. 50), and Defendant filed its Reply (ECF No. 52). After careful consideration of the parties' briefs and the applicable law, the Court **GRANTS** Defendant's Motion to Transfer to the Northern District of California.

### I. FACTUAL BACKGROUND

Plaintiff filed this lawsuit accusing Defendant of infringing on claims 8 and 12 of U.S. Patent No. 10,715,235 (the "'235 Patent"). ECF No. 1. The '235 Patent describes a transmitted beam-forming network that "routes data-communication transmission to the client devices via directed communication beams that are emanated from an antenna assembly." ECF No. 1-1 at 25. Plaintiff alleges that Defendant manufactures, uses, and sells products ("Accused

1

Products") that practice the technology of the '235 Patent. ECF No. 1 at 8. The Accused Products include several HP laptop and desktop computers. *Id.* at 8–9.

HP is a corporation organized under the laws of Delaware. ECF No. 18 at 12. Its principal place of business is in Palo Alto, California. *Id*. HP maintains offices in both the transferor and transferee districts: one located in Palo Alto, California, and another in Austin, Texas. *Id.* at 4, 12. HP conducts tests and manages integration of its WiFi modules in Taipei, Taiwan. ECF No. 27 at 6.

Vivato is a limited liability company organized under the laws of Delaware with its principal place of business in Venice, California. ECF No. 1 at 5. Vivato has filed seven separate cases in this District that all assert infringement of the '235 Patent. ECF No. 50 at 7. See *XR Commc'ns LLC v. Amazon.com, Inc. et al.*, No. 6:21-CV-00619-ADA (W.D. Tex. June 16, 2021); *XR Commc'ns LLC v. ASUSTeK Comput. Inc.*, No. 6:21-CV-00622-ADA (W.D. Tex. June 16, 2021); *XR Commc'ns LLC v. Google LLC,* No. 6:21-CV-00625-ADA (W.D. Tex. June 16, 2021); *XR Commc'ns LLC v. Samsung Elecs. Co., LTD et al.*, No. 6:21-CV-00626-ADA (W.D. Tex. June 16, 2021); *XR Commc'ns LLC v. Dell Techs. Inc. et al.,* No. 6:21-CV-00646-ADA (W.D. Tex. June 22, 2021); *XR Commc'ns LLC v. Apple, Inc.*, No. 6:21-CV-00620-ADA (W.D. Tex. June 16, 2021); XR *Commc'ns LLC v. Microsoft Corp.*, No. 6:21-CV-00695-ADA (W.D. Tex. July 1, 2021). Vivato has also filed an additional case for related patents with overlapping inventors. See *XR Commc'ns LLC v. Cisco Sys., Inc. et al.*, No. 6:21-CV-00623-ADA (W.D. Tex. June 16, 2021).

## II. LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Section 1404(a) is

2

intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under Section 1404(a) is whether a civil action "might have been brought" in the transfer destination venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (hereinafter "*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*. Courts evaluate these factors based on the situation which existed at the time of filing rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *Volkswagen II*, 545 F.3d at 315. The burden that a movant must carry is not that the alternative venue is more convenient, but that it is clearly more convenient. *Id.* at 314 n.10. Although the Vivato's choice of forum is not a separate factor entitled to special weight, respect for the Vivato's choice of forum is encompassed in the movant's elevated burden to

3

"clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *Id*. at 315. While "clearly more convenient" is not necessarily equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-CV-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

### III. DISCUSSION

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the Northern District of California. HP asserts that this case could have originally been brought in the NDCA because it is headquartered in Palo Alto, California. ECF No. 27 at 5. Vivato does not contest this point. This Court finds that venue would have been proper in the NDCA had Vivato originally filed this case there. Thus, the Court proceeds with its analysis of the private and public interest factors to determine if the NDCA is clearly more convenient than the Western District of Texas ("WDTX").

#### A. The Private Interest Factors

##### i. The Relative Ease of Access to Sources of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-CV-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he questions is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (quoting *In re Genentech*, 566 F.3d 1388, 1345 (Fed. Cir. 2009)).

HP contends that documents relating to marketing, sales, financials, and patent licensing for the Accused Products are kept in the NDCA. ECF No. 27 at 10. Additionally, HP's research,

4

design, and development documents are primarily in NDCA, Spring, Texas, and Taiwan. *Id.* at 2. Vivato has two primary responses to HP's claims. First, Vivato states that HP's motion did not identify physical documents and was vague about the location of electronic documents. ECF No. 50 at 2. Second, Vivato argues that the files are likely electronic and can be accessed as easily in Texas as in California. *Id*. at 2–3.

The Fifth Circuit has stressed the importance of not relying on technological improvements in electronic discovery to hold that accessing remotely stored documents favors one forum over another. *Volkswagen II*, 545 F.3d at 316. And the Federal Circuit has agreed that the ability to access documents remotely does not render this factor superfluous. *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1321 (Fed. Cir. 2021). The "location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval," are still relevant. *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021) (citing *In re Radmax*, Ltd., 720 F.3d 285, 288 (5th Cir. 2013)). Even if the physical location of HP's documents is entirely unknown, the fact that documents are created and maintained in the NDCA is still relevant.

The sources of proof in the present case come primarily from NDCA, Taiwan, and Spring, Texas. ECF No. 27 at 2. Taiwan likely has the most relevant evidence in this case because the documents there are technical in nature and are necessary for Vivato to develop its infringement case. *Id*. at 10. The evidence abroad favors neither district as inspection of those documents could be made in either California or Texas. HP also has documents related to the design, development, marketing, and sales of the Accused Products on the computers of employees in the NDCA, Taiwan, and Spring, Texas. EFC No. 28 ¶ 23. Although the documents in Spring would likely be more accessible in the WDTX, the documents in Palo Alto are already in the transferee forum. The final group of relevant evidence would be HP's sales and financial information, which would be highly relevant to damages. Those documents are in the NDCA. ECF No. 27 at 10. As most of the relevant evidence usually comes from the accused infringer,

and HP contends that no relevant documents are stored in WDTX, it is likely that documentary evidence is more easily accessible in the NDCA.

For those reasons, the Court finds that this factor favors transfer.

### *ii. The Availability of Compulsory Process to Secure the Attendance of Witnesses*

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii). Under this factor, the Court focuses on "non-party witnesses whose attendance may need to be secured by a court order." *Fintiv, Inc.*, No. 6:18-CV-00372, 2019 WL 4743678 at *5 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014).

The parties identify several third-party witnesses in this case. The first group of witnesses is the named inventors. HP identifies four named inventors in California and one named inventor in Texas who hold information regarding conception and reduction to practice. ECF No. 27 at 7–9. The inventors include Siavash Alamouti (NDCA), Hujun Yin (NDCA), Praveen Mehrotra (NDCA), Bobby Jose (NDCA), and Marcus Da Silva (WDTX). *Id*. Vivato suggests that HP has not sufficiently verified the residence of the individuals who allegedly reside in California. ECF No. 50 at 4. Vivato argues that "assuming" one of eight individuals who appear in an internet search for Praveen Mehrotra living in San Jose with connections to Spokane, Washington is unreliable evidence. *Id*. Further, Vivato contends that the LinkedIn profile for Hujun Yin does not exist. *Id*. Praveen Mehrotra's location on the asserted patent is Spokane, Washington, and HP provided some evidence of his location using an image of an internet search. ECF No. 27-4. Although HP's evidence of Mr. Mehrotra's location is weak at

6

best, the Court can infer that Mr. Mehrotra is located in the NDCA. The Court finds that four named inventors reside in the NDCA and one in the WDTX. The Court also notes that it is unlikely each named inventor has unique information about the patent.

The second group of third-party witnesses is former HP and Vivato employees. These individuals are ██████████ and Ken Biba. ECF No. 28 ¶ 21–22; ECF No. 27 at 8. ██████████ is the former "██████████████████████████████████████" living in the WDTX. ECF No. 28 ¶ 21. Mr. Biba is the former CEO of Vivato and lives in California. ECF No. 27 at 8. Neither party contests the relevance of these two witnesses. Vivato argues, however, that the Court should not give Mr. Biba any weight in the analysis as he is a "willing witness." ECF No. 50 at 5; ECF No. 50-1 ¶ 4. Specifically, the Chan Declaration reveals he is willing to travel to this District. *Id*. It is difficult to imagine that Mr. Biba is willing to travel from California to Waco to testify, yet is unwilling to travel within the state to testify. The Court will therefore consider him a willing witness, who is not properly analyzed under this factor.

The third group includes witnesses involved in business transactions with HP and Vivato. Glen Nuttall, Vladislav Teplitskiy, and Nicholas Transier are three California attorneys who prosecuted the patent of the Accused Products. ECF No. 27 at 8. Michael Haycox and Chris Thomas, shareholders involved in "valuing Vivato's patent portfolio," are in California. *Id*. HP contends that the shareholders have "information relevant to damages . . . sale and foreclosure proceedings relevant to [Vivato]'s standing." *Id*. Vivato argues that the attorneys are unlikely to have relevant knowledge, and the Court should not give them any weight. ECF No. 50 at 4. Vivato further contends that even if the Court gives the attorneys weight, they are in Southern California. *Id*. Vivato states that the Court should not give Mr. Haycox or Mr. Thomas weight as they do not have any useful knowledge and have been "cherry-picked." *Id.* at 5. HP provides reasoning for their selection and contests that these individuals were picked solely for venue purposes. ECF No. 52 at 2–3. Vivato does not provide evidence to negate the relevance of the third-party witnesses in this category. HP alleges these individuals have

information relevant to conception, reduction to practice, prosecution, and damages. *Id*. The Court finds that five witnesses related to various business dealings live in California.

Finally, HP contends that Intel, Realtek, and Qualcomm are important third-party witnesses because each supplied HP with the accused WiFi modules. ECF No. 27 at 2–3. HP does not list any specific employees but does claim that Intel and Realtek have offices in the NDCA, and Qualcomm has an office in San Diego, California. Further, HP states the employees who "evaluate, select, test and manage the WiFi modules" are in Taiwan, which is not within the reach of this Court or the NDCA. *Id*. Vivato argues that Intel and Qualcomm have offices in Austin and that Realtek has no U.S. locations on their website. ECF No. 50 at 5. The Court does not find any employees from Intel, Realtek, or Qualcomm that weigh in favor or against under this factor.

In sum, two third-party witnesses would be subject to compulsory process in the WDTX. These include one named inventor and one former HP employee. By contrast, nine third-party witnesses would be subject to compulsory process in the NDCA. Because four of those witnesses are inventors who worked on the same patent, their testimony would likely be duplicative. Although HP has not shown why one inventor would have materially different testimony over another, there are still more third-party witnesses within the subpoena power of the NDCA.

For those reasons, the Court finds this factor weighs in favor of transfer.

### iii. The Cost of Attendance and Convenience for Willing Witnesses

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d at 1343. When analyzing this factor, the Court should consider all potential material and relevant witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 WL 4155236, at *16 (E.D. Tex. Sept. 19, 2017). "When the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100

miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 203). But it is unclear when the 100-mile rule applies, as the Federal Circuit has stated that courts should not apply the rule "rigidly" in some cases where witnesses would be required to travel a significant distance no matter where they testify. *In re Apple*, 979 F.3d at 1341 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). The Federal Circuit has indicated that time away from an individual's home is a more important metric than distance. *Id.*

There are two groups of witnesses that this Court must consider. The first group of witnesses is employees "who are most knowledgeable about the marketing, sales, financials, and patent licensing related to the Accused Products." ECF No. 27 at 5. HP has identified seven of these employees that are located in the NDCA. ECF No. 28 at 3–4. HP has also identified two witnesses who worked with the accused technology in Texas, one of which lived in the WDTX. *Id.* at 5. HP contends that this witness is the only relevant party that resides in the WDTX. *Id*. Although HP does have a large presence in this District with its Austin office, HP contends that none of the employees who live or work in the Austin office have decision-making authority on the accused technology. *Id* at 6.

The second group of witnesses consists of eleven employees that evaluate, select, test, and manage integration of the WiFi modules in the Accused Products. ECF No. 28 at 4–5. All these employees live and work in Taipei, Taiwan. *Id* at 5. The Federal Circuit has instructed that when the witness must travel a significant distance no matter where they testify, the difference between traveling to California and Texas is slight at best. *Genetech*, 566 F.3d at 1344 (stating that the circuit said "the '100-mile' rule should not be rigidly applied" and that

"witnesses from Europe [would] be required to travel a significant distance no matter where they testify" when comparing travel to the NDCA and Eastern District of Texas); *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). HP thus overstates the difference in travel to the NDCA versus the WDTX because employees from Taiwan would have to travel a significant distance no matter where they testify. Those witnesses will be removed from their communities for roughly the same amount of time should they travel to either district. The foreign employees have a neutral effect on the transfer analysis in the present case.

Lastly, the Court considers Mr. Biba, who, as discussed above, should be considered a willing witness. Although he indicated he would be willing to travel to the WDTX, the fact that he lives in California would make travel to the NDCA more convenient.

Because eight willing witnesses reside in the NDCA and only one lives in the WDTX, the Court finds that this factor favors transfer.

### iv. All Other Practical Problems that Make Trial of a Case Easy, Expeditious and Inexpensive

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-CV-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation . . . involving the same patent-in-suit, . . . pertaining to the same underlying technology and accusing similar services, . . . the Federal Circuit cannot say the trial court clearly abuses its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d at 1346 n.3.

HP asserts that there are no practical problems associated with transfer. ECF No. 27 at 10. Vivato contends that transfer is impractical because seven other cases involving the same

patent are pending in this Court. ECF No. 50 at 7. Furthermore, Vivato argues there is another case involving a different patent with similar technology creating substantial overlap between the cases. *Id*. at 8. HP rebuts, stating, "a plaintiff should not be able to bootstrap a defendant into an inconvenient forum merely by suing them along with others in the same forum." ECF No. 52 at 4.

The existence of seven co-pending cases raises substantial practical problems in transferring this case. Transferring this case to California could create practical difficulties, including two court's ruling on the same patents asserted by the same plaintiff, and the risk of inconsistent rulings.

Trying all seven cases in this Court would maintain judicial economy and avoid practical problems. However, all cases related to this one are in the early stages of trial, and four have pending motions to transfer. This Court has recognized that it "must also consider the presence of co-pending motions to transfer." *Parus Holdings Inc. v. LG Elecs. Inc.*, No. 6:19-CV-00432-ADA, 2020 WL 4905809, at *7 (W.D. Tex. Aug. 20, 2020); See *In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017) ("Based on the district court's rationale, therefore, the mere co-pendency of related suits in a particular district would automatically tip the balance in non-movant's favor regardless of the existence of co-pending transfer motions and their underlying merits. This cannot be correct."). The other defendants' motions to transfer are still pending, and the Court will evaluate each individually. As a result, the co-pending cases are neutral with respect to transfer.

For those reasons, the Court finds that this factor is neutral.

## B. The Public Interest Factors

### i. Administrative Difficulties Flowing from Court Congestion

This factor concerns whether there is an appreciable difference in docket congestion between the two forums. *See In re Juniper Networks, Inc.*, 14 F.4th at 1322. This factor

considers "[t]he speed with which a case can come to trial and be resolved." *In re Genentech, Inc.*, 566 F.3d at 1347. Additionally, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id*.

HP argues that this factor is neutral, because Vivato is a patent holding company and is not under time pressure. ECF No. 27 at 13. HP suggests this factor is still neutral even if Vivato needs a quick resolution. *Id*. Vivato argues that this factor disfavors transfer because the case will come to trial and be resolved faster in this Court. ECF No. 50 at 8. Vivato cites the Federal Court Management Statistics to show that this Court would resolve this case faster. *Id*. Specifically, Vivato points out that a case takes approximately three and a half years to reach trial in NDCA. *Id*. HP contrasts those statistics with the fact that this Court is more congested with 800 patent cases compared to the NDCA's 300 patent cases. ECF No. 27 at 13. Vivato argues that despite having more cases, the case will still reach trial faster in this Court. ECF No. 50 at 9. Neither party considers the Court's non-patent docket, which does impact time to trial.

The Court finds that this factor is neutral. Any difference in docket congestion and time-to-trial is negligible. And even if this Court would weigh this factor in favor of transfer, the Federal Circuit has repeatedly diminished its importance in the transfer analysis, at least as compared to the other factors. *In re Genentech, Inc.*, 566 F.3d at 1347.

For those reasons, the Court finds this factor is neutral.

### ii. Local Interest in Having Localized Interests Decided at Home

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent cases "are not a fiction." *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info,*

*Inc. v. Facebook, Inc.*, No. 3:14-CV-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and the events that gave rise to a suit.'" *In re Apple*, 979 F.3d at 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). But courts should not heavily weigh a party's general contacts with a forum that is untethered from the lawsuit, such as a general presence. *Id*. Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *See In re Juniper Networks, Inc.*, 14 F.4th at 1320.

      HP contends this factor heavily favors transfer because both parties in the present case have strong ties to NDCA. HP's headquarters, where sales, marketing, financial, and patent licensing decisions related to the Accused Products are made, is in the NDCA. ECF 27 at 12. Additionally, Vivato is headquartered in California and the company that Vivato acquired the accused technology from was headquartered out of San Francisco, California. *Id*. Vivato responds that HP employs 151 personnel in an office within the WDTX. While Vivato is correct that HP advertises and sells their product within the WDTX, they have not demonstrated that HP targets the WDTX specifically beyond HP's nationwide marketing strategy. Additionally, Vivato cannot establish that the employees in HP's Austin office are relevant to the present case before this Court.

      For these reasons, the Court finds that this factor weighs in favor of transfer.

### iii. Familiarity of the Forum with the Law That will Govern the Case

Both parties agree that this factor is neutral.

### iv. Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

Both parties agree that this factor is neutral.

## IV. CONCLUSION

Having considered the private and public interest factors, the Court's conclusions for each factor are summarized in the following table:

| **Factor** | **The Court's Finding** |
|---|---|
| Relative ease of access to sources of proof | Favors transfer |
| Availability of compulsory process to secure the attendance of witnesses | Favors transfer |
| Cost of attendance for willing witnesses | Favors transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Neutral |
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest | Favors transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

Four of the eight factors are neutral. Four factors favor transfer, and no factors disfavor transfer. The NDCA is in a better position to secure the attendance of more witnesses via compulsory process, has easier access to sources of proof, has a greater interest in the outcome

of the case, and is more affordable for willing witnesses to attend. Accordingly, Defendant has met its burden by showing that transfer to the NDCA is clearly more convenient.

**IT IS ORDERED** that Defendant's Motion to Transfer Venue to the Northern District of California is **GRANTED.**

SIGNED this 1st day of Agust, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE